[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action seeking a dissolution of the marriage, joint custody of the minor children with primary residence with the wife, specific rights of visitation and other relief. The defendant husband appeared by counsel and filed proposed orders and claims for relief seeking joint custody of the minor children and other relief. Both parties appeared for trial with counsel and testified. From the evidence and financial affidavits, the court finds as follows:
The plaintiff wife, whose maiden name was Beverly Bartlett, married the defendant husband at Cheshire, Connecticut, May 27, 1967. She has resided continuously in this state immediately prior to the filing of this complaint for at least one year. All statutory stays have expired, and the court has jurisdiction.
The parties have four children, issue of their marriage, two of whom have reached their majority, the other two, who are CT Page 8521 still minors are: Daniel Adam Paul, born March 19, 1976; and Jonathan Llewellyn Paul, born February 27, 1981. No other minor children were born to the wife since the date of the marriage. Neither party nor either of the minor children are recipients of public assistance.
The parties agreed on the record that they shall have joint legal custody of the two minor children, Daniel and Paul, with primary physical custody of Daniel with mother and of Jonathan with father, and that each shall have reasonable rights of visitation with the child residing with the other parent. The court finds that this is in the best interests of the children in accordance with the provisions provided for in General Statutes46b-56a(b).
This 26 plus year marriage had difficulties from its beginning when the parties married as teenagers. The wife claimed that the husband's drinking and verbal abuse were the causes of the breakdown. The husband, although conceding that he drank at the outset, claimed that he went to AA for one year and did not drink for over 13 years, and began again recently. Both of the older children experienced problems with substance abuse, and Daniel also had some problems "with the law". Also, increasing stress upon this fragile marriage was the long illness of the wife's mother before her death this summer; during that illness, the wife was preoccupied with her mother's care, which required her to go to Rhode Island often. Another problem was the apparent bitterness and animosity of Jonathan, the youngest child, toward the mother. He now resides with the father and Daniel resides with the mother. The parties have indicated a willingness to cooperate in counseling to rebuild the relationship between the mother and Jonathan, and the court urges them to do that.
From the evidence, it is clear that the marriage has broken down irretrievably, and the court so finds, but the court, on this evidence, is unable to apportion fault microscopically between the parties for the breakdown, and the effort would be futile. The court concludes that they are equally responsible for the breakdown of their marriage and equally responsible for their omission of any effort to rehabilitate or restore their marriage.
The wife is 44 years of age, a high school graduate by G.E.D. which she recently obtained, and in good health physically, although she suffers from low self esteem and low self confidence and anxiety. She has, for the most part, been the primary CT Page 8522 homemaker and caretaker of the children, except for sporadic periods when she worked as a companion or caretaker for an elderly woman or as a babysitter. Her highest earnings during her lifetime were $268 per week gross, with no benefits. She plans to continue in her counseling and obtain educational or vocational training to allow her to enter the work place as soon as she feels able to do so.
The husband is almost 46 years of age, a high school graduate and works as an oil burner service mechanic for Dreyfus Company. He has been with this company for about one year and its predecessor Dahl Oil for about ten years before. Dahl, a union employer, was purchased by Dreyfus, the husband's present employer which is non-union.
The husband suffers from ulcerative colitis, which does not disable him from working at present, but led to severe illness on one occasion in the past, causing him to lose much time from work. Also, as a result of this illness, the family home had to be remortgaged so that the parties could pay family living expenses and medical bills.
The husband presently earns a gross of $645 per week, which includes some overtime. He has substantial benefits accruing to his employment which include health and medical insurance, a non-contributory retirement plan to which his employer contributes a sum equal to three (3%) percent of his salary annually and a 401K plan to which the employer contributes a sum equal to one-half of his contribution, up to a maximum of an additional three (3%) percent of husband's salary, if husband contributes six (6%) percent, as he has been doing; the 401K plan has a value of $11,000 and the retirement plan, a value of $6,000.
The parties' other significant assets are: the jointly-owned family dwelling at 246 Haley Road, Ledyard, Connecticut, in which the husband resides, which is in need of some repair, which the court believes is worth $100,000 and has mortgages totalling about $28,000 and an equity of about $72,000.
The husband also has a retirement plan through his union, which he claims requires membership in a "union shop" for ten years before vesting, and therefore, is not presently vested, but may be subject to resurrection if his shop becomes a union shop, and he pays accrued union dues and the $600 to the union to return the plan to good standing. In any event, the husband is willing to CT Page 8523 transfer 50 percent of the present value of the union retirement to the wife by QDRO.
They also have three vehicles, a 1988 Chevrolet Sprint, which they have agreed would be transferred to the wife for use by Daniel, a 1985 Chevrolet truck which would remain with the husband, and a 1988 Buick, which the wife inherited from her mother, which will remain with the wife.
The wife's inheritance from her mother also included a one-half (1/2) interest in a single-family dwelling in Westerly, Rhode Island, which is free of liens and has a value of $70,000 and certificates of deposit valued at $20,000. These assets are net to the wife after expenses of administration, taxes, her mother's funeral expenses, etc.
The court also finds that the husband, by reason of his accident case and from funds from his mother, contributed $20,000 to the purchase of a family dwelling in Mystic, Connecticut, which was later sold, and the net proceeds of about $62,000 were then used to purchase the parties' present home in Ledyard.
The court also finds that the husband has far superior present earnings and future earning capacity than the wife has. The court further finds that the wife's homemaking activities during the marriage included the primary care of the children, homemaking, cleaning, laundry, cooking, shopping and the like, and, were non-monetary contributions to the family which made it possible for the parties to enjoy the appreciation in value in both the Mystic and Ledyard homes, and retain those properties, and to enable the husband to work full time and over time. See O'Neill v. O'Neill, 13 Conn. App. 300; cert. denied 207 Conn. 806 (1988).
The court also finds that the child support for the child residing with the mother, pursuant to the guidelines, is $110 per week under a split residential custody arrangement.
The court has considered the evidence and findings stated in the light of all of the factors contained in General Statutes46b-81, 46b-82 and 46b-84, and in the light of federal and state income tax consequences, and orders the following:
A decree dissolving the marriage may enter on the ground of irretrievable breakdown. CT Page 8524
Joint legal custody of the minor children is awarded to the parties; primary physical custody of Daniel is awarded to mother, and of Jonathan to father, with each parent to have reasonable rights of visitation with the child in the other parent's physical custody.
The husband shall pay to the wife the sum of $150 per week as unallocated alimony and support which shall be automatically modified to $150 per week periodic alimony on March 19, 1994; and shall be further modified to $110 per week periodic alimony on September 1, 1994. Said payments shall be taxable income to the wife, and deductible by the husband, and shall terminate upon the death of either party or the wife's remarriage, and shall be secured by an immediate wage execution.
Under the circumstances of this case and the taxable consequences of the order and the split physical custody arrangements, the court deems it inappropriate to apply the guidelines mechanicalistically.
The father shall maintain both minor children on his present job-related health and medical insurance and shall pay one-half (1/2) of all health and medical bills for said children not covered or reimbursed by said coverage. The mother shall pay the other one-half (1/2) thereof. An order shall be entered respecting said health insurance pursuant to General Statutes46b-84(c).
The father shall have the dependency exemptions for both children for state and federal income tax purposes.
As additional alimony, which shall not be modified as to term, the husband shall pay the sum of $142 per month toward the premium for the wife's coverage under the health and medical insurance available through his place of employment, until her death, remarriage or three years from this date, whichever occurs first. In the event she obtains employment where such benefits are available, the amount of his payment shall be reduced to the cost of wife's premium, if less than $142 per month. After three years from date, the wife shall bear the cost of said premium, whether she is insured through conversion of the husband's health insurance coverage or otherwise.
The wife shall transfer all her right, title and interest in the family home at 246 Haley Road, Ledyard, to the husband CT Page 8525 subject to the mortgages thereon, which he shall save her harmless from. The husband shall simultaneously execute and deliver to the wife a promissory note in the amount of $26,000 payable with interest at the rate of three (3%) percent per annum; said note shall be secured by third mortgage on said premises, and the principal and interest of said note shall be due and payable upon the first to occur of the following events: husband's death or remarriage; his living together with an unrelated female in the mortgaged premises; or sale thereof; or husband's ceasing to live therein as his principal residence; or July 1, 1999. In the event he refinances the home on or before December 15, 1993, then he shall satisfy the promissory note obligation by the payment of $21,000.
The husband shall assign to the wife by Qualified Domestic Relations Orders (QDROs) fifty (50%) percent of his interests valued as of October 1, 1993, in the following: his Dreyfus retirement plan and his union retirement plan as those are shown and described on his financial affidavits, and twenty-five (25%) percent of his Dreyfus 401K plan. The husband's attorney shall draft said QDROs. The court shall retain jurisdiction to modify said QDROs to comply with federal and state law relating to retirement/pension plans.
The wife shall take and have, free of husband's claims, her inheritance from her mother, including her interest in the Westerly, Rhode Island home and certificates of deposit, the 1988 Buick, the 1988 Chevrolet Sprint (which shall be for the use of their son, Daniel), her savings account in the amount of $30 and the following items in the Ledyard dwelling: piano, desk, bed, two (2) bureaus, two (2) chests, some bags in the attic, a box with linens in the study, her mother's crystal, her stereo, Christmas decorations and other personal items in the basement all as described on plaintiff's "Appendix A".
The husband shall take and have, free of any claims of the wife, his bank account shown on his financial affidavit in the amount of $350, his remaining interest in his 401K, employer and union retirement plans, his 1985 Chevrolet truck, and all tangible personal property remaining in the family home, excepting the items specifically set out to the wife.
The husband shall designate the wife as irrevocable beneficiary of the life insurance policy described in his financial affidavit in the amount of $5,000, so long as he is obligated to CT Page 8526 pay unallocated support and alimony or alimony hereunder.
Each party shall pay his or her own attorney's fees. The court cannot find that a denial of the plaintiff's request for attorney's fees would undermine the financial awards to the wife herein ordered.
Teller, J.